NOT FOR PUBLICATION OR CITATION

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

CIVIL ACTION NO. 06-CV-93-JBC

VIRGIL KELLY                                                                                          PLAINTIFF

VS:                              **MEMORANDUM OPINION AND ORDER**

JAMES L. MORGAN, ET AL.                                                                    DEFENDANTS

\*\*\*   \*\*\*   \*\*\*   \*\*\*   \*\*\*

Virgil Kelly ("Kelly") is an inmate confined at the Northpoint Training Center in Burgin, Kentucky ("Northpoint"), and has filed a *pro se* civil rights complaint pursuant to 42 U.S.C. § 1983. Kelly is suing a number of individual prison officials for imposing disciplinary segregation upon him for possession of drug contraband, where the prison subsequently determined the drugs were prescription medication for his heart. Kelly seeks money damages.

The court screens civil rights complaints pursuant to 28 U.S.C. § 1915A. *McGore v. Wrigglesworth*, 114 F.3d 601, 607-08 (6th Cir. 1997). As Kelly is appearing *pro se*, his petition is held to less stringent standards than those drafted by attorneys. *Burton v. Jones*, 321 F.3d 569, 573 (6th Cir. 2003); *Hahn v. Star Bank*, 190 F.3d 708, 715 (6th Cir. 1999). During screening, the allegations in his complaint are taken as true and liberally construed in his favor. *Urbina v. Thoms*, 270 F.3d 292, 295 (6th Cir. 2001). But the Court may dismiss a case at any time if it determines the action (i) is frivolous or malicious, or (ii) fails to state a claim upon which relief can be granted. 28 U.S.C. § 1915(e)(2).

## BACKGROUND

In the morning of April 6, 2005, Northpoint officers Taylor and Loy entered the cell where Kelly was housed with a number of other prisoners and proceeded to search his possessions. In particular, the officers seized a pill bottle from an open locker and inspected it. Kelly had been prescribed nitroglycerine by the prison medical staff to treat a heart condition. Upon inspecting the pill bottle, however, the officers observed what appeared to be crack cocaine. Kelly was taken into custody and read his *Miranda* rights. The officers took Kelly to Northpoint's medical department, where a nurse inspected the pill bottle's contents and determined that they did not appear to be nitroglycerine. Later that day, the contents were tested with a Narcotics Analysis Reagent Kit #4. When the bottle's contents tested positive for cocaine, Kelly was placed in segregation pending a hearing.

On April 8, 2005, Kelly was charged with "Possession or Promoting Dangerous Contraband," a Category 6, Item 4 infraction. On April 12, 2005, an Adjustment Hearing was held, Adjustment Hearing Officer Conley presiding. At this hearing, Kelly objected to the poor quality of the photographs given to him of the alleged substance. The hearing was adjourned, and thereafter Kelly was provided with better quality photographs as he had requested.

The hearing was re-convened on April 21, 2005, Adjustment Hearing Officer Conley again presiding. Officers Taylor and Loy testified. Kelly's request that Officer Bowling be called as a witness was denied. While Bowling was not present during the search, Kelly

alleges that Bowling would have testified that he had repeatedly cautioned Kelly not to leave his medication bottle out in the open. Kelly avers that this testimony would have indicated that other inmates had access to the pill bottle and could have placed contraband in it. At the conclusion of the Adjustment Hearing, Kelly was found guilty of the infraction and sentenced to 90 days in disciplinary segregation and 180 days' forfeiture of good conduct time.

On April 26, 2005, Kelly appealed that determination to Warden Morgan, citing six claimed errors which allegedly violated his substantive due process rights. Kelly asserted that:

> 1. Officer Conley was prohibited from presiding over the re-convened hearing under CPP 15.6(VI)(A)(4)(a)(3), which prohibits an officer from presiding over a hearing if he is assigned the responsibility of subsequently reviewing the decision;
>
> 2. The incident report was not clear, accurate, and concise in violation of CPP 15.6(IV)(C)(1)(a) because it did not state where the pill bottle was found or whether all of the substance found in the bottle was cocaine;
>
> 3. The Adjustment Hearing Officer's refusal to require Officer Bowling to testify as a witness violated CPP 15.6 (IV)(D)(2)(a)'s requirement that inmates be allowed to call witnesses in their defense;
>
> 4. The failure or refusal of Northpoint staff to provide him with access to the confidential information which caused officers to single out Kelly and his belongings for search violated CPP 15.6 (IV)(C)(1)(a) and CPP 9.18;
>
> 5. The failure to test the contents of the pill bottle beyond the initial field test rendered the chemical evidence insufficiently reliable to support a finding of guilty in violation of CPP 15.6 (VI)(B)(1)(a), (VI)(D)(3)(d); and
>
> 6. Because the Adjustment Hearing Officer did not permit Officer Bowling to testify, the hearing officer did not consider all of the evidence in finding Kelly guilty of the infraction in violation of CPP 15.6 (VI)(B)(1)(a), (VI)(D)(3)(d).

On May 4, 2005, the Warden denied Kelly's appeal.

In June 2005, Kelly asked Northpoint staff to provide him with copies of any further chemical testing done by the Kentucky State Police on the substance in the pill bottle. Northpoint staff Burdette and Rion indicated that the matter was closed and that no further documentation would be forthcoming.

In October-November 2005, Kelly filed an action in Boyle Circuit Court seeking a declaration of rights regarding the infraction, naming the same defendants named in the instant proceeding. The case was docketed as 05-CI-00371. Shortly after the action was commenced, the defendants advised the Circuit Court that subsequent testing of the bottle's contents revealed that its contents were, as Kelly had maintained all along, nitroglycerin rather than cocaine. They further advised the Circuit Court that Kelly's good time credits would be restored and his record expunged of the incident, and that those steps would render the action moot. The Circuit Court agreed, thereafter dismissing the case as moot on January 25, 2006. Kelly does not state whether he appealed the Boyle Circuit Court's decision.

Kelly then filed the instant suit, naming Warden James L. Morgan, Adjustment Hearing Officer David A. Conley, and Captain Hardie Johnson as defendants, seeking compensatory and punitive damages for the time he spent in disciplinary segregation.

## DISCUSSION

Kelly's claims must be dismissed for a number of reasons.

**1.    Claim Preclusion**

First, Kelly's claims are barred under the doctrine of claim preclusion. Federal courts must give full faith and credit to state court judgments. U.S. Const., Art. IV, § 1; 28

U.S.C. § 1738.  Claim preclusion prevents a party from attempting to litigate a civil rights claim that could or should have been litigated in the prior state court proceeding.  *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 82-84 (1984).

Kentucky law determines the scope of the preclusive effect to be given to the Boyle Circuit Court's judgment.  *Migra,* 465 U.S. at 84-85 (1984); *United States v. Dominguez*, 359 F.3d 839, 841-42 (6th Cir. 2004).  In Kentucky, claim preclusion applies to bar "not only to the issues disposed of in the first action, but to every point which properly belonged to the subject of the litigation in the first action and which in the exercise of reasonable diligence might have been brought forward at the time."  *May v. Webb*, Ky.App., 2004 WL 1699910 (2004) (Kentucky inmate's second declaratory judgment action barred by claim preclusion in light of prior declaratory judgment action upholding imposition of segregation and loss of good conduct time for possession of contraband).

In the Boyle Circuit Court action, Kelly challenged the outcome of the Adjustment Hearing, and as a result his loss of good conduct time was reversed, whereupon the Circuit Court dismissed the action as moot.  The due process claims he asserts in the present action are claims that were or could have been brought in the action in Boyle Circuit Court and, hence, are barred under principles of claim preclusion.  *See McMillan v. Bailey-Darby Coal Co.*, Ky., 251 S.W.2d 225, 229 (1952) ("[A]fter a binding declaration of rights has been made by a declaratory judgment, a party cannot treat the judgment as a mere piece of advice and proceed to attempt to exercise rights denied him by the judgment with the view that whether he can exercise the rights so denied him can be litigated separately from the question of whether he had the rights in the first instance.").  The fact that Kelly sought

a declaration of rights as part of his civil action did not prevent him from asserting his constitutional claims therein. KRS 418.040; *Fontaine v. Dep't. of Finance*, Ky., 249 S.W.2d 799, 800 (1952) ("Except when clear statutory remedies are exclusive, the best way to avoid losing a case on account of wrong choice of remedies is probably to combine the declaratory action with whatever other remedy or remedies may seem to be available. Such a combination is generally permissible and is advantageous in that the merits will be considered if any one of the remedies sought is found to be appropriate."); *Smith v. O'Dea*, Ky.App., 939 S.W.2d 353, 355 (1997) ("A petition for declaratory judgment pursuant to KRS 418.040 has become the vehicle, whenever Habeas Corpus proceedings are inappropriate, whereby inmates may seek review of their disputes with the Corrections Department.").

**2.     Due Process**

Kelly's procedural due process claims also fail to state a claim. In *Wolff v. McDonnell*, 418 U.S. 539 (1974), the Supreme Court held that the Due Process Clause of the Fourteenth Amendment requires that a prisoner faced with a disciplinary charge is entitled to: (1) advance written notice of the charges against him, no less than 24 hours prior to the hearing; (2) a qualified right to call witnesses and present documentary evidence in his defense, at least when permitting him to do so would not be unduly hazardous to institutional safety or correctional goals; and (3) a written statement by the fact finders as to the evidence relied upon and the reasons for the disciplinary action taken. *Id*. at 563-67. Kelly alleges that the defendants failed to satisfy these requirements, referring to various sections of CPP 15.6.

But before the procedural due process protections described by *Wolff* are required, a plaintiff must first demonstrate that he possessed a protected liberty interest and that he was deprived of that interest without due process of law. *Hahn v. Star Bank*, 190 F.3d 708, 716 (6th Cir. 1999). In the context of prison disciplinary proceedings, in *Sandin v. Conner*, 515 U.S. 472 (1995) the Supreme Court clarified that the *Wolff* protections are required only where the disciplinary action to be taken by prison officials is one that "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id*. at 484.

Importantly, in *Sandin* the Supreme Court concluded that neither the prison regulation at issue nor the Due Process Clause of its own force required the satisfaction of the *Wolff* protections where the penalty imposed, a thirty-day sentence in disciplinary segregation, placed the prisoner in a situation only minimally different from conditions which could ordinarily be expected in prison and hence did not impose any "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id*. at 486-87. Such a liberty interest will rarely be found absent the loss of good time credits, hence affecting not merely the conditions of confinement but the duration as well, or a significant period of disciplinary segregation that presents an unusual hardship on the inmate. *Sandin*, 515 U.S. at 484; *Ahmad v. O'Brien*, 2005 WL 1523460 (E.D.Ky. 2005) (being held in disciplinary segregation following allegedly false misconduct charge does not state due process claim absent atypical hardship).

The penalty imposed upon Kelly here, ninety days in disciplinary segregation, is insufficient to invoke the *Wolff* procedural protections under *Sandin*. *See Merchant v.*

*Hawk-Sawyer*, 2002 WL 927026 (6th Cir. 2002) (unpublished disposition) (21 months in special housing unit for both administrative and disciplinary reasons were "ordinary incidents of prison life" and did not implicate protected liberty interest); *Smith v. Sapp*, 1998 WL 384620 (6th Cir. 1998) (prisoner "cannot invoke the procedural safeguards of the Due Process Clause as to those incident reports resulting in his placement in disciplinary segregation because he has no liberty interest, state-created or otherwise, in remaining free of disciplinary segregation"); *Whitford v. Boglino*, 63 F.3d 527, 532-33 (7th Cir. 1995) (six-month confinement in disciplinary confinement was not an atypical and significant hardship under *Sandin*); *Scales v. District of Columbia*, 894 F.Supp. 14 (D.D.C. 1995) (four months insufficient); *Winters v. Godinez*, 1995 WL 382505 (N.D. Ill. 1995) (six months insufficient); *Stone-Bey v. Barnes*, 913 F. Supp. 1226 (N.D. Ind. 1996) (one year insufficient); *Carter v. Carriero*, 905 F.Supp. 99 (W.D.N.Y. 1995) (nine months insufficient).

Accordingly, the Court concludes that the penalty imposed upon Kelly was not an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," and his allegations are thus insufficient to even trigger the procedural due process protections in *Wolff*. His claims must therefore be dismissed with prejudice. *Mackey v. Dyke*, 111 F.3d 460, 463 (6th Cir. 1997); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790-91 (6th Cir. 1995).

### 3. No Physical Injury

Finally, Kelly's complaint is subject to dismissal because it contains no allegation that he suffered any concrete, physical injury as a consequence of being placed in disciplinary segregation for 90 days. The Prison Litigation Reform Act provides that "No

Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e); *Jarriett v. Wilson*, 414 F.3d 634, 640 (6th Cir. 2005); *Merchant v. Hawk-Sawyer*, 2002 WL 927026 (6th Cir. 2002) (unpublished disposition). Absent such an allegation, the complaint must be dismissed.

## CONCLUSION

Accordingly, it is **ORDERED** as follows:

(1)   Kelly's motion for a ruling [Record No. 14] is **GRANTED.**

(2)   Plaintiff's complaint is **DISMISSED WITH PREJUDICE.**

(3)   The Court certifies that any appeal would not be taken in good faith. 28 U.S.C. § 1915(a)(3); *McGore v. Wrigglesworth*, 114 F.3d 601, 610-11 (6th Cir. 1997); *Kincade v. Sparkman*, 117 F.3d 949 (6th Cir. 1997).

(4)   Judgment shall be entered contemporaneously with this Memorandum Opinion and Order in favor of the defendants.

Signed on January 20, 2007

JENNIFER B. COFFMAN, JUDGE
U.S. DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY